WOODLAWN TRUST & SAVINGS BANK et al. v. DRAINAGE DIST. NO.
2 OF DAKOTA COUNTY, NEB., et al.

(Circuit Court of Appeals, Eighth Circuit.   June 24, 1918.)

No. 4927.

1. EMINENT DOMAIN ⟨⟩271—REMEDIES OF OWNERS—DAMAGES.
   Where landowners, seeking injunction to restrain drain construction,
   failed to ask temporary restraining order, and, pending trial and appeal,
   the drain was completed, the landowners should be left to their action for
   damages.

2. EMINENT DOMAIN ⟨⟩302—REMEDIES OF OWNERS—DAMAGES.
   Where drain was constructed with probable damage to land, the
   amount of which was conjectural, while the landowners could recover,
   in one action, the same amount of damages as were recoverable in pro-
   ceedings in the nature of eminent domain, it is advisable to await ex-
   perience to establish the amount of damage.

3. EMINENT DOMAIN ⟨⟩271—REMEDIES OF OWNERS—DAMAGES.
   A drainage district, whose drains will probably damage land, cannot
   be confined to alternatives of injunction against maintenance of the
   ditch or duty to divert water and avoid damage, but may make full com-
   pensation for the damage.

Appeal from the District Court of the United States for the District
of Nebraska; Joseph W. Woodrough, Judge.

Suit in equity for injunction by the Woodlawn Trust & Savings Bank
and others against Drainage District No. 2 of Dakota County, Neb.,
and others.   Decree dismissing the suit, and plaintiffs appeal.   Modified
and affirmed.

Edward Boyle, of Chicago, Ill. (Edwin J. Stason and A. L. Beardsley,
both of Sioux City, Iowa, Edward J. Stevens, of Chicago, Ill., and
John R. Winterbotham, of Sioux City, Iowa, on the brief), for appel-
lants.

R. E. Evans, of Dakota City, Neb. (J. A. C. Kennedy and Philip E.
Horan, both of Omaha, Neb., on the brief), for appellees.

Before CARLAND, Circuit Judge, and AMIDON and MUNGER,
District Judges.

AMIDON, District Judge.   Plaintiffs brought this action against the
drainage district, asking for a perpetual injunction to restrain the con-
struction of a ditch which should divert the waters of Elk creek into
Jackson Lake, and thence through the outlet of the lake into the Mis-
souri river.   The court dismissed the suit, and plaintiffs appeal.

The project has been long under consideration.   It has the approval
of engineers of the highest standing.   Jackson Lake is hardly more
than a long coulee.   The Missouri river many years ago changed its
course and opened a new channel to the north.   Jackson Lake occupies
a part of the former channel.   At times of high water the river backs
up into this lake, and at times of flood the old channel is occupied by
the river as one of its channels.   The change in the course of the river
left four or five sections of land lying between the lake and the new

channel. This land was formerly in South Dakota, and is now in Nebraska, and is the property which the suit is brought to protect. From the lake there is an outlet or chute leading into the Missouri river. It is plaintiffs' contention that, if the waters from Elk creek are diverted into the lake, it will cause their lands to be submerged at times of high water. The evidence shows clearly that these lands are now valuable, and portions of them are highly improved and productive. It is the position of the defendants and their engineers that the drain will not cause any damage to the lands of plaintiffs; that, on the contrary, the waters diverted by the drain into Jackson Lake will pass through its outlet into the Missouri river.

The construction of the drain was first entered upon in 1909, but its actual construction was suspended by a suit instituted by an owner of land lying north of the lake, a neighbor of the plaintiffs here, by the name of O'Neill. He obtained an injunction, and carried his case through all the courts of Nebraska, and thence to the Supreme Court. All these courts refused to restrain the construction of the drain. O'Neill v. Leamer, 93 Neb. 786, 142 N. W. 112; Id., 239 U. S. 244, 36 Sup. Ct. 54, 60 L. Ed. 249.

[1] When a flood occurs in the Missouri river at the same time that there is a heavy rainfall in the watershed drained by Elk creek, it is plain that the volume of water cast into Jackson Lake by the drainage ditch would add to the depth to which plaintiffs' lands would be submerged, and on other occasions the drain might cause plaintiffs' lands to be inundated, when this would not result from the river alone. Again, the evidence shows clearly that floods frequently occur in the Missouri river from rainfalls further up its long course, which cause the inundation of plaintiffs' property. It will be difficult to assign to the drain the amount of damages which it causes to plaintiffs' property, because the lands are low, and are frequently inundated by the river. The damages are consequential, and not for property taken. In such a situation it is safer to proceed by experience than by theory. The defendants admit their liability for any damage that may be caused by the drain to plaintiffs' property. They deny that such damage will actually occur, but concede that, if their opinion is not borne out by experience, the district will be liable to make full compensation. The bill was filed on April 8, 1916, final hearing begun on July 6th, and decree entered on July 15th, of that year. Plaintiffs did not ask for a temporary restraining order. The drain has been constructed, having been completed in October, 1916. Such being the situation, the plaintiffs should be left to their action for damages. That is the holding of the highest court of the state. Hall v. Crawford Co., 94 Neb. 460, 143 N. W. 741; Nemaha Valley Drainage District v. Marconit, 90 Neb. 514, 134 N. W. 177; Bronson v. Albion Telephone Co., 67 Neb. 111, 93 N. W. 201, 60 L. R. A. 426, 2 Ann. Cas. 639. The holding of the federal courts is the same. New York City v. Pine, 185 U. S. 93, 22 Sup. Ct. 592, 46 L. Ed. 820; St. P., M. & M. Ry. Co. v. W. U. Co., 118 Fed. 497, 518, 55 C. C. A. 263; Andrus v. Berkshire Power Co., 147 Fed. 76, 77 C. C. A. 248; McCarthy v. Bunker Hill, etc., Co., 164 Fed. 927, 941, 942, 92 C. C. A. 259; Kansas v. Colorado, 206 U. S. 46, 117, 27 Sup. Ct. 655, 51

L. Ed. 956; Georgia v. Tenn. Copper Co., 206 U. S. 230, 240, 27 Sup. Ct. 618, 51 L. Ed. 1038, 11 Ann. Cas. 488; Bliss v. Anaconda Copper Co. (C. C.) 167 Fed. 342; ·Stuart v. U. P. R. Co., 178 Fed. 753, 103 C. C. A. 89; Cubbins v. Miss. River Com. (D. C.) 204 Fed. 299.

[2] We do not mean that plaintiffs should be confined to successive actions for damages year by year. On the contrary, if it shall be shown as the result of experience, and shown to be probable as an inference from that experience and the proven facts, that plaintiffs' property will be damaged by the drain, then they should be permitted to recover the same damages in a single action as they would have been entitled to recover if proceedings in the nature of eminent domain had been instituted to have their damages assessed before the drain was constructed. When, however, it is uncertain whether any damages will be suffered by the construction of such a project, and, if damages should occur, their extent is speculative and conjectural, it is better to await the safe guidance of experience rather than proceed upon conjecture and speculation. The rule which the courts have adopted as to the effect of a reduction of rates upon public utilities is a safe rule here. Willcox v. Consolidated Gas Co., 212 U. S. 19, 29 Sup. Ct. 192, 53 L. Ed. 382, 15 Ann. Cas. 1034, 48 L. R. A. (N. S.) 1134; Knoxville v. Knoxville Water Co., 212 U. S. 1, 29 Sup. Ct. 148, 53 L. Ed. 371; Northern Pacific Ry. Co. v. North Dakota, 236 U. S. 585, 35 Sup. Ct. 429, 59 L. Ed. 735, L. R. A. 1917F, 1148, Ann. Cas. 1916A, 1; Newark Natural Gas Co. v. Newark, 242 U. S. 405, 37 Sup. Ct. 156, 61 L. Ed. 393, Ann. Cas. 1917B, 1025.

[3] Defendants cannot properly be shut up to the alternatives: (1) An injunction against the maintenance of the ditch; or (2) the duty to divert the water whenever the ditch will cause damage to plaintiffs' property. In lieu of either, they are entitled to make full compensation for the damage. The trial court dismissed the bill upon the merits. That dismissal should have been without prejudice to plaintiffs' right to bring action for their damages, or to apply in this suit for such relief. With that modification, the decree is affirmed.